UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, <br><br>    Plaintiff, <br><br>AHMED ELSHENAWY, <br><br>    Plaintiff-Intervenor, <br><br>    v. <br><br>SIERRA PACIFIC INDUSTRIES, <br><br>    Defendant. | No. 2:08-cv-01470-MCE-DAD <br><br>**MEMORANDUM AND ORDER** |

The instant litigation arises from a public enforcement action filed by the Plaintiff U.S. Equal Employment Opportunity Commission ("EEOC") against Sierra Pacific Industries ("Defendant"). Moreover, Ahmed Elshenawy ("Elshenawy" or "Plaintiff"), the individual on whose behalf the EEOC is acting, has brought his own Complaint in Intervention in this matter.

///

///

1

Now before the Court is a Motion for Partial Summary Judgment, brought by Defendant in accordance with Federal Rule of Civil Procedure 56, seeking to dismiss as legally insufficient claims made by both the EEOC and Elshenawy for retaliation under Title VII of the Civil Rights Act of 1964. Defendant also seeks dismissal of similar retaliation claims made by the Complaint in Intervention pursuant to the California Fair Employment and Housing Act ("FEHA").[1] For the reasons set forth below, Defendant's Motion will be denied.

**BACKGROUND**

Defendant hired Plaintiff Elshenawy, an Egyptian Muslim, on July 28, 2000 to work at its Red Bluff, California Millwork Division. Defendant terminated Plaintiff on April 9, 2004 for allegedly violating Defendant's "no tolerance" sexual harassment policy.

Through this lawsuit, Elshenawy makes various allegations, including the claim that his termination was actually in retaliation for his complaints of alleged harassment on account of national origin.

///
///
///

---

[1] While Defendants initially argued that the FEHA retaliation claims were not only legally insufficient but also for Elshenawy's alleged failure to exhaust his FEHA claims, Defendant has since dropped its exhaustion argument. See Def.'s Reply, p. 10.

2

1  According to Elshenawy, after the September 11, 2001 terrorist
2  attack he began to experience increased incidents of such
3  harassment, which he contends included being called a "camel
4  jockey" and a "stupid Egyptian" by two co-workers, along with a
5  vulgar epithet referring to him as an "Arab".
6      In June of 2002, Plaintiff was accused of making a sexually
7  harassing remark to another employee, Alfonso Sanchez.  As a
8  result, he received a written reprimand.  Then, on or about
9  December 29, 2003, Plaintiff received a second disciplinary write-
10 up for purportedly making an offensive sexual gesture to yet
11 another co-worker, Javier Villagomez-Diaz, despite the fact that
12 the investigating supervisor never conclusively determined whether
13 or not the gesture was indeed sexual in nature.  See SUF 9.
14     After the December 2003 incident, Plaintiff asked to speak
15 with SPI Division Manager Greg Thom about what had transpired.
16 Defendant's Vice President of the Millwork and Window Division,
17 Kendall Pierson, also participated in the January 5, 2004 meeting
18 that resulted.  Plaintiff's wife, Rebekah Elshenawy, was in
19 attendance as well.  During the course of the meeting, it appears
20 undisputed that Plaintiff voiced concern about losing his job.
21 The accounts of what transpired, however, diverge at that point.
22 While Thom and Pierson allege that Plaintiff never brought up the
23 question of national origin harassment during the course of the
24 meeting, Plaintiff and his wife claim just the opposite.
25 According to Plaintiff, he complained that he was being harassed
26 and being called names like "Osama", "Bin Laden", and "Saddam".
27 See EEOC's Ex. 16, Dep. of Ahmed Elshenawy, 56:6-15, 57:19-24,
28 58:11-20; Ex. 17; Dep. of Rebekah Elshenawy, 9:14-22.

3

Moreover, both Plaintiff and his wife also claim that Mr. Pierson, the highest ranking officer in the particular plant where Plaintiff was employed, indicated in response that if Elshenawy continued to complain rather than tolerate the situation, his job could be in jeopardy.  See Rebekah Elshenawy Dep., 9:9-13; Ahmed Elshenawy Dep., 33:1-7.  While Thom and Pierson deny that the subject of alleged harassment ever came up during the course of the meeting, Defendant's Human Relations Manager, Tracey Moore, indicated in subsequently prepared notes that Plaintiff had in fact complained to Pierson about derogatory comments being made in reference to his nationality and religion.  See EEOC's Ex. 18, Ms. Moore's Notes to File dated April 7, 2004.[2]

On April 3, 2004, less than three months after the aforementioned January 5, 2004 hearing, Plaintiff was accused by co-worker Andrea Black of making a lewd gesture with a lumber crayon attached to his pants.  Although Plaintiff claimed that in swinging the crayon he merely intended to inquire whether the crayon belonged to another employee, and denied that any sexual connotation was involved, Plaintiff was immediately suspended for four shifts as a result of the incident and was told to report back to work on April 9, 2004, after an investigation had been concluded, and after a determination had been made as to whether further disciplinary action, including potential termination, was indicated.

---

[2] While the Court recognizes that Defendant has objected to this evidence, as well as various other matters advanced by Plaintiff, to the extent that this background section references such evidence, Defendant's objections are overruled for purposes of the present Motion.

4

1    On April 5, 2004, Plaintiff drove to Defendant's main office
2 in Anderson, California, and asked to speak to Defendant's owner,
3 George Emmerson.  Defendant's Personnel Manager, Tracy Moore, met
4 with Plaintiff after telling him that Emmerson was unavailable.
5 Plaintiff proceeded to tell Moore that he was being unfairly
6 accused of sexual harassment that in fact was attributable to
7 his national origin.  Moore proceeded to set up a meeting with
8 Greg Thom to discuss the matter.  That meeting took place on
9 April 7, 2004, and according to Plaintiff, he again aired his
10 complaints of national origin harassment.
11   In the meantime, on April 6, 2004, Elshenawy sent a
12 certified letter to George Emmerson asking for help and
13 delineating the following complaints:

> Almost on a daily basis I am confronted with derogatory comments in regards to my beliefs and nationality. After the September 11, 2001 bombings the incidents of harassment have increased. I have been falsely accused of sexual harassment on three separate occasions.  A co-worker physically assaulted me.  Then I was written up for the incident.  In most situation management has accused me without listening to my version of what happened.

19 EEOC's Ex. 27, Elshenawy Letter to Defendant dated April 6, 2004.
20   On April 9, 2004, after reporting to work following the
21 completion of his disciplinary suspension, Elshenawy was told he
22 was being terminated.  Prior to the commencement of this lawsuit,
23 the stated reason for Plaintiff's termination was sexual
24 harassment.  See EEOC's Statement of Disputed Fact Nos. 42, 44.
25 Both Greg Thom and Kendall Pierson were involved in the decision
26 to terminate Elshenawy.  Id. at 42, 43.
27 ///
28 ///

5

1    Defendant now claims that the actual decision to terminate
2 Plaintiff was made on April 5, 2004, after a telephone conference
3 involving Mr. Thom, Mr. Pierson, and Defendant's Director of
4 Human Resources, Ed Bond.  That conference allegedly occurred
5 before Plaintiff complained to Tracey Moore at SPI headquarters
6 later that same day.  Both Thom, Pierson and Bond claim Through
7 declarations submitted in support of Defendant's Motion) to have
8 had no knowledge of any complaints Elshenawy made about
9 discrimination or harassment prior to the decision to terminate
10 on April 5, and Defendant argues that no retaliation for any
11 protected activity on Elshenawy's part could have taken place
12 absent such knowledge.  Although that contention runs squarely
13 contrary to Plaintiff's own claim that he in fact complained to
14 both Pierson and Thom some three months beforehand, on January 5,
15 2004, and despite the fact that Plaintiff unquestionably
16 complained of harassment on April 5, 2004, Defendant nonetheless
17 moves for summary adjudication as to Plaintiff's retaliation
18 claims on grounds that no retaliation could have occurred under
19 the circumstances.
20    In addition to claiming that the decision to terminate was
21 made before Plaintiff aired any complaints of national origin
22 harassment, Defendant also now takes the position that
23 Plaintiff's termination was also justified for various other
24 reasons, including sixteen different violations of Defendant's
25 attendance policy, five incidents of poor work performance, one
26 incident of assaulting co-worker.
27 ///
28 ///

6

1    Following his termination, Plaintiff filed a complaint with
2  the EEOC against Defendant which alleged discrimination,
3  harassment, and retaliation because of his national origin.  On
4  April 6, 2006, after having reviewed all of the evidence obtained
5  during investigation, the EEOC concluded that Plaintiff had been
6  subject to harassment, suspension, and discharge due to his
7  national origin.  The EEOC subsequently commenced this litigation
8  pursuant to Title VII and FEHA, contending that Defendant's
9  actions were committed "intentionally" and "with malice or with
10 reckless indifference to the federally protected rights of the
11 Charging party."  (Pl.'s Compl. ¶¶ 9, 10.)  Plaintiff Elshenawy
12 filed a Motion to Intervene on December 1, 2008, which this Court
13 granted on December 8, 2009.  (ECF No. 19.)

## STANDARD

17   The Federal Rules of Civil Procedure provide for summary
18 judgment when "the pleadings, depositions, answers to
19 interrogatories, and admissions on file, together with
20 affidavits, if any, show that there is no genuine issue as to any
21 material fact and that the moving party is entitled to a judgment
22 as a matter of law."  Fed. R. Civ. P. 56(c).  One of the
23 principal purposes of Rule 56 is to dispose of factually
24 unsupported claims or defenses. Celotex Corp. v. Catrett, 477
25 U.S. 317, 325 (1986).
26 ///
27 ///
28 ///

1    Rule 56 also allows a court to grant summary adjudication as
2 to some, but not all, of the claims being asserted.  <u>See</u> Fed. R.
3 Civ. P. 56(a) ("A party seeking to recover upon a claim ... may
4 ... move ... for a summary judgment in the party's favor upon all
5 or any part thereof."); <u>see also</u> <u>Allstate Ins. Co. v. Madan</u>, 889
6 F. Supp. 374, 378-79 (C.D. Cal. 1995); <u>France Stone Co., Inc. v.</u>
7 <u>Charter Township of Monroe</u>, 790 F. Supp. 707, 710 (E.D. Mich.
8 1992).
9    The standard that applies to a motion for summary
10 adjudication is the same as that which applies to a motion for
11 summary judgment.  <u>See</u> Fed. R. Civ. P. 56(a), 56(c); <u>Mora v.</u>
12 <u>ChemTronics</u>, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).

> Under summary judgment practice, the moving party
> always bears the initial responsibility of informing
> the district court of the basis for its motion, and
> identifying those portions of "the pleadings,
> depositions, answers to interrogatories, and admissions
> on file together with the affidavits, if any," which it
> believes demonstrate the absence of a genuine issue of
> material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. at 323 (quoting Rule 56(c)).

   If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 585-87 (1986); <u>First Nat'l Bank v. Cities Serv. Co.</u>, 391 U.S. 253, 288-89 (1968).

   In attempting to establish the existence of this factual dispute, the opposing party must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.

8

Fed. R. Civ. P. 56(e).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of Western Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987).  Stated another way, "before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 14 Wall. 442, 448, 20 L. Ed. 867 (1872)).  As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts....Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586-87.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.

9

Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

## ANALYSIS

In order to show a prima facie case of retaliation under Title VII, Plaintiff must initially establish 1) that Elshenawy engaged in a protected activity; 2) that he suffered an adverse employment action; and 3) that a causal link exists between the protected activity he alleges and the adverse employment action he claims was taken against him. Payne v. Norwest Corp., 113 F.3d 1079, 1080 (9th Cir. 1997). At the summary judgment state, Plaintiff needs only offer evidence that "gives rise to an inference of unlawful discrimination. Yartzoff v. Thomas, 809 F.2d 1371, 1374 (9th Cir. 1987).

If Plaintiff succeeds in establishing the requisite prima facie case for retaliation, the burden of proof in a Title VII claim shifts to Defendant to articulate a legitimate, nondiscriminatory reason for Elshenawy's termination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). That burden requires the production of some evidence allowing the trier of fact to rationally conclude that the employment decision in question was not motivated by discriminatory animus. See Yartzoff, 809 F.2d at 1376. If the Defendant succeeds in producing such evidence, then the burden shifts back to Plaintiff one final time to demonstrate that Defendant's explanation is merely a pretext for a retaliatory motive. See Steiner v. Showboat Operating Co., 25 F.3d 1459, 1464 (9th Cir. 1994).

10

The same burden shifting applicable to Title VII claims, as articulated above, applies equally to California state claims under FEHA. See Flait v. N. Am Watch Corp., 3 Cal. App. 4th 467, 475-76 (1992); Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1044-45 (2005)(adopting Title VII burden shifting analysis for FEHA retaliation claim).

**A.   Prima Facie Showing**

In requesting summary adjudication on Plaintiff's retaliation claims, Defendant first argues that Plaintiff cannot meet his prima facie burden for establishing a viable cause of action, and that judgment in its favor as a matter of law must result. According to Defendant, this is because Plaintiff cannot show, as he must, any causal connection whatsoever between Elshenawy's protected activities and his termination. Defendant contends that it has produced unrefuted evidence that none of the individuals involved in the decision to terminate Elshenawy had any knowledge of Elshenawy's complaints of discrimination at the time they decided to terminate Elshenawy on April 5, 2004.

Although declarations submitted by the alleged decisionmakers do claim that they had no knowledge of any claims of discrimination levied by Elshenawy before they decided to terminate him on April 5, Plaintiff has presented evidence suggesting squarely otherwise.

///
///
///

11

As indicated above, both Elshenawy and his wife testified that both Greg Thom and Kendall Pierson, both of whom were involved in the decision to terminate, were present at the January 5, 2004 meeting during which Elshenawy states he complained of discrimination.  Indeed, both Elshenawy and his wife go so far as to claim that Pierson suggested that Elshenawy could be terminated if he continued to voice complaints of alleged discrimination.

These contradictory claims present a classic triable issue of fact.  Given the divergence in testimony, it is impossible for this Court to find that Plaintiff's retaliation claims fail on a prima facie basis due to any lack of knowledge.  Defendant nonetheless asks the Court to discount the testimony of Elshenawy and his wife as "uncorroborated and self serving" pursuant to the Ninth Circuit's decision in Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).  In Villiarimo, however, the testimony in question appears to have consisted of the plaintiff's unsupported allegations that male agents were punished less severely than she was for similar infractions.  Id. at 1059 n.5.  Moreover, Kennedy v. Applause, Inc., the case to which Villiarimo cites in discounting self-serving and uncorroborated testimony as a basis for denying summary judgment, itself involved testimony by a plaintiff that flatly contradicted both her prior sworn testimony as well as medical evidence that had been adduced.  Kennedy, 90 F.3d 1477, 1481 (9th Cir. 1996).
///
///
///

The present case is not comparable to either Villiarimo or Kennedy.  Here, both Elshenawy and his wife clearly testified that Elshenawy complained of being discriminated against some three months before termination occurred.  Both individuals also offered testimony that Pierson, one of the individuals who was involved in the ultimate decision to terminate Elshenawy, also intimated that Elshenawy could suffer adverse consequences if he chose to continue complaining.  Finally, Defendant's own personnel manager, Tracy Moore, prepared notes which appear to confirm that Elshenawy complained of discrimination at the time of the January 5, 2004 meeting.  Particularly when viewed together, this evidence is hardly of a "self serving and uncorrobated" variety unworthy of credence in determining whether a triable issue of fact exists.

Additionally, even aside from what did or did not occur during the meeting on January 5, 2004, there remains a triable issue of fact with respect to just when the decision to terminate Elshenawy was made.  Virtually all of Defendant's documentation submitted in connection with the EEOC investigation indicates that Elshenawy was terminated on April 9, 2004, after he complained again of discrimination following his suspension for another alleged incident of sexual harassment.  The individuals who purportedly decided to terminate Elshenawy, however, now indicate by way of declaration that the actual decision to terminate was made on the morning of April 5, 2004, before Elshenawy met with Tracey Moore later that day, before he sent a written complaint to Defendant's President the following day, and before he met with management at Defendant's Red Bluff facility on April 7.

13

Nowhere in the pre-litigation documentation submitted to the EEOC (which consisted of lengthy Position statements dated March 1, 2005, June 20, 2005 and August 23, 2006, respectively; see EEOC's Exs. 2, 3 and 24) was an earlier decision to terminate ever suggested.  Obviously, if a termination date of April 9, 2004 is given any credence (and there certainly is evidence suggesting that April 9 was indeed the relevant date), that is yet another factor suggesting that a trier of fact could determine, based on available evidence, that Defendant's management did know about Elshenawy's final discrimination complaints before they decided to fire him.  The potential conflict as to when the decision to terminate was made is, therefore, yet another factor precluding summary judgment on Plaintiff's prima facie retaliation claim.[3]

In sum, despite Defendant's protestations to the contrary, there is evidence indicating that Elshenawy complained about discriminatory treatment to Greg Thom and Kendall Pierson on January 5, 2004, three months before he was terminated, and on April 5, 2004, just four days prior to his termination, when he complained again to Tracey Moore, wrote a letter to Defendant's President the next day, and thereafter met with company management.

///

---

[3] Although the Court recognizes Defendant's claim that the April 9, 2004 date remains accurate as being the date Elshenawy was actually informed of his termination, the fact remains that on summary judgment, all reasonable inferences from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255.  Here, given the fact that the prior documentation submitted to the EEOC nowhere reflects an earlier decision to terminate, an inference can be made that April 9 was in fact the pertinent date.

14

Given this timing, a jury could reasonably find a causal connection, as required for a prima facie case of retaliation, between Elshenawy's complaints of discrimination and his termination.  The Ninth Circuit has noted that "[c]ausation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity." <u>Coburn v. PN II, Inc.</u>, 2010 WL 1258124 at *3 (9th Cir. 2010) (quoting <u>Davis v. Team Elec. Co.</u>, 520 F.3d 1080, 1094 (9th Cir. 2008).  The Court has further determined that "three to eight months is easily within the time range that supports an inference of retaliation." <u>Coszalter v. City of Salem</u>, 320 F.3d 968, 977 (9th Cir. 2003).  The circumstances of the present case easily fit within those parameters.

**B.   Pretext**

In addition to arguing that Plaintiff cannot establish a causal connection between Elshenawy's protected activity in complaining of discrimination and his ultimate termination sufficient to create any prima facie inference that retaliation occurred, Defendant goes on to assert that even if Plaintiff surmounts that hurdle (which the Court has determined they have) a viable claim still cannot lie because Plaintiff cannot show that Defendant's legitimate, non-discriminatory reasons for terminating Elshenawy were pretextual.

The Ninth Circuit has outlined how Plaintiff can show the requisite pretext:

///

15

> [A] plaintiff can prove pretext in two ways;
> (1) indirectly, by showing that the employer's proffered explanation is "unworthy of credence" because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer. These two approaches are not exclusive; a combination of the two kinds of evidence may in some cases serve to establish pretext so as to make summary judgment improper.

Chuang v. Univ. of Cal. Davis, Bd. Of Trustees, 225 F.3d 1115, 1127 (9th Cir. 2000) (quoting Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1220-22 (9th Cir. 1998)).

Here, as indicated above, we have evidence in the form of testimony by both Elshenawy and his wife that Kendall Pierson warned Elshenawy in January of 2004 that he would "get rid" of him if he continued to complain of harassment and/or discrimination. There is also evidence suggesting that Elshenawy's termination, which occurred some three months later, came just after another complaint of discrimination. Consequently, in the present matter we have both temporal proximity of Elshenawy's complaints to his termination, as well as evidence (in the form of Pierson's purported "threat") linking Elshenawy's protected activity (complaining about discrimination) to the adverse action later taken against him (termination). Despite Defendant's claim that Elshenawy was terminated for sexual harassment, as well as for numerous other infractions concerning other work-related issues, there is enough evidence establishing pretext for Plaintiff to survive summary judgment.

///
///
///

Defendant's shifting rationale for Elshenawy's termination is also problematic from a summary judgment perspective. Defendant's Personnel Manager, Tracey Moore, testified at deposition that sexual harassment was the only reason why Elshenawy was terminated on April 9, 2004.  EEOC's Ex. 7, Moore Dep., 6:18-19.  Greg Thom was consistent with this version of events some four days later when he notified California's Employment Development Department ("EDD") that Elshenawy was terminated for misconduct and provided the disciplinary notices for his incidents of alleged sexual harassment as support. EEOC's Ex. 8, Thom letter to EDD dated April 13, 2004.[4]  Some two years later, however, by the time of Defendants' Position Statement to the EEOC dated August 23, 2006 (EEOC's Ex. 3), Defendant began to identify as an additional reason for Elshenawy's termination his "poor" attendance record.  That justification had never been voiced previously.  In addition, once the instant litigation was commenced, Elshenawy's overall work performance, and even a purported assault on another worker, were also enumerated as reasons for his termination.  Such shifting explanations can also raise a genuine issue of fact concerning pretext, particularly where, as here, Defendant's diverging rationales are viewed in combination with the direct and temporal evidence cited above.  See Ross v. Brooks College, 2009 WL 2353262 at *1 (9th Cir. 2009) (citing Washington v. Garrett, 10 F.3d 1421, 1434 (9th Cir. 1993).

---

[4] Defendant's evidentiary objections to this letter, which was prepared in the ordinary course of business in response to Elshenawy's administrative complaint, are overruled.

17

**CONCLUSION**

For the foregoing reasons, Defendant's Motion for Partial Summary Judgment (ECF No. 48) is DENIED.[5] The Court also notes that Plaintiff EEOC has filed a Motion to Strike certain evidence cited by Defendant in support of its Motion. The EEOC's Motion to Strike (ECF No. 62) is also DENIED to the extent the evidence it references was not critical to the Court's determination and therefore need not be further addressed at this juncture.

IT IS SO ORDERED.

Dated: October 4, 2010

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

---

[5] Because oral argument was not of material assistance, the Court ordered this matter submitted on the briefs. E.D. Cal. Local Rule 280(g).

18